## Glass v. Freeman, Appellant.

22

Argued November 27, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John I. Hartman, Jr.,* with him *Windolph, Burk-holder & Hartman,* for appellants.

*John R. Gibbel,* with him *J. Marlin Shreiner,* and *Zimmerman, Zimmerman, Myers & Gibbel,* for appellant.

*John Milton Ranck,* with him *Charles Foltz Herr,* and *Appel, Ranck, Herr & Appel,* for appellee.

OPINION BY MR. JUSTICE EAGEN, April 24, 1968:

Dallas E. Glass instituted this action to recover damages for personal injuries allegedly caused by the negligence of the defendants, Clarence and Marie Freeman, Donald Bauman and R. A. Reinhold. At trial a compulsory nonsuit was entered in favor of the defendant Reinhold.[1] As to the other defendants, the issue was submitted to the jury and a verdict resulted in favor of Glass in the amount of $17,894.83 against both the Freemans and Bauman. Glass filed a motion for a new trial, asserting that the verdict was inadequate. The Freemans filed a motion for judgment notwithstanding the verdict. Bauman filed a motion for judgment notwithstanding the verdict and/or a new trial. Subsequently, the court below overruled all motions and judgments were entered on the verdict. The Freemans and Bauman filed these appeals.

It should first be noted that, on appeal from the refusal of a motion for a new trial, this Court will reverse only if the lower court abused its discretion or committed an error of law which controlled the out-

---

[1] The correctness of this ruling is not before us.

come of the case. E.g., *Cinciripini v. Harmony Short Line Motor Transportation Co.*, 416 Pa. 231, 205 A. 2d 860 (1965) (per curiam); *Kiser v. Schlosser*, 389 Pa. 131, 132 A. 2d 344 (1957). And on appeal from the denial of a motion for a judgment n.o.v., the evidence must be viewed in a light most favorable to the verdict winner. Evidence supporting the verdict is considered and the rest is rejected. Conflicts in testimony are resolved in favor of the verdict winner. E.g., *Connolly v. Philadelphia Transportation Co.*, 420 Pa. 280, 216 A. 2d 60 (1966); *Szawlinsky v. Campbell*, 402 Pa. 651, 168 A. 2d 581 (1961); *Kuhns v. Brugger*, 390 Pa. 331, 135 A. 2d 395 (1957).

The Freemans own and operate a tavern in Lancaster County. Adjacent to the tavern is a parking lot. On Saturday, October 19, 1963, the Freemans, their son-in-law, Donald Bauman, several other relatives and a few neighbors, including the plaintiff Glass who volunteered to help without compensation, were engaged in blacktopping this parking lot. The blacktop was delivered to the premises by truck, then spread with shovels and rakes and finally rolled by a nine hundred pound tractor with steel wheels.

The tractor, which had been borrowed from R. A. Reinhold, was being operated on the day of the accident by Donald Bauman. During the morning, he left the tractor at the bottom of the parking lot with its engine running while he went to the men's lavatory. While Bauman was away, his seven year old son Jimmy climbed aboard and began driving the tractor up the sloped parking area. When the father returned, he saw Jimmy on the tractor as it rolled backward down the slope toward a group of men which included the plaintiff.

Bauman ran to the tractor and tried to stop it by depressing the foot brake pedal with his hand while

running backwards. He shouted no warning to the endangered group of men who were then unloading a truck load of blacktop. The plaintiff was intent on shoveling blacktop to a raker and did not see the roller before it struck and severely injured him.

## Motion for Judgment n.o.v.

Bauman maintains that he was not negligent. He argues that when he left the tractor unattended he did not know that Jimmy was in the vicinity and could not foresee that the boy might operate the tractor and injure someone.

The evidence with reference to whether or not Bauman knew that Jimmy was in the area is conflicting. Bauman denied seeing Jimmy on the premises until the accident. Jimmy's mother testified that she did not bring him to the premises until shortly before the accident. Several other witnesses said that they had not seen the boy until the accident. However, the plaintiff himself testified that on the morning of the accident Jimmy was riding on a wooden plank extending from the rear of the roller then being operated by his father; that he warned Bauman it was dangerous for the child to ride on the roller, and that Bauman responded by thumbing his nose at the plaintiff. Viewed in a light most favorable to the verdict winner, Bauman did know that Jimmy was in the vicinity of the parking lot when he left the tractor unattended with its motor running.

In view of this knowledge, Bauman's argument that he had no reason to foresee that Jimmy would attempt to drive the tractor is indefensible. A child naturally is attracted by equipment of this kind, and the danger that he might imitate his father was not remote. Thus

a jury certainly could find that Jimmy's behavior was foreseeable. See *Hogan v. Etna Concrete Block Co.*, 325 Pa. 49, 188 A. 763 (1936), and *Reichvalder v. Borough of Taylor*, 120 Pa. Superior Ct. 217, 181 A. 864 (1935), affirmed, 322 Pa. 72, 185 A. 270 (1936).

Bauman cites *Liney v. Chestnut Motors, Inc.*, 421 Pa. 26, 218 A. 2d 336 (1966) to support his position that he could not foresee danger to the plaintiff. In *Liney*, we held that a complaint was properly dismissed on preliminary objections in the nature of a demurrer. In that case, an automobile parked with its keys in the ignition was stolen from in front of the defendant's garage which was located in an area where car thefts were rather frequent. The thief later negligently injured the plaintiff. In holding that the complaint failed to state a cause of action, this Court reasoned that "assuming . . . the defendant should have foreseen the likelihood of the theft of the automobile, nothing existed in the present case to put it [i.e., the defendant] on notice that the thief would be an incompetent driver." And we went on to distinguish a similar case, *Anderson v. Bushong Pontiac Co.*, 404 Pa. 382, 171 A. 2d 771 (1961), in which the opposite result had been reached. We noted that in *Anderson* "several salient facts . . . clearly put the defendant in that case on notice, not only that the automobile was likely to be stolen, but also that it was likely to be stolen . . . by an incompetent driver." For precisely this reason, *Anderson* controls this case. Since it was foreseeable that the boy might attempt to drive the tractor, it also was foreseeable that he would drive it negligently. A seven year old hardly can be expected to have the ability or judgment to operate a piece of heavy equipment safely.

Consequently, viewing the evidence and all reasonable inferences therefrom in a light most favorable to the plaintiff, Bauman's action, leaving the tractor un-

attended with the engine running when he knew Jimmy was playing in the vicinity, was negligent.[2]

Bauman also maintains that even if he was negligent in leaving the tractor unattended, his negligence was not the proximate cause of the accident because Jimmy's actions were a superseding cause. There is no merit in this position. Since the possibility of Jimmy's negligence is what made the father's conduct negligent, the son's actions were not a superseding cause. *Anderson v. Bushong Pontiac Co.*, supra; *Kuhns v. Brugger*, 390 Pa. 331, 347, 135 A. 2d 395, 404 (1957); *Reichvalder v. Taylor*, supra; Restatement 2d, Torts §449 (1965).

The Freemans submit that their duties to plaintiff arising from their ownership of the land where the accident occurred were not breached.

It is established in Pennsylvania that a possessor of land who permits a third person to conduct an activity on the land has a duty to exercise reasonable care to prevent that third person from creating an unreasonable risk of bodily harm to others, if the possessor knows or has reason to know that he has the ability to control the third person and that there is a need and opportunity to exercise control. *Styer v. Reading*, 360 Pa. 212, 61 A. 2d 382 (1948); *Stevens v. Pittsburgh*, 329 Pa. 496, 198 A. 655 (1938) (per curiam), affirming 129 Pa. Superior Ct. 5, 194 A. 563 (1937); Restatement 2d, Torts §318 (1965). With respect to business

---

[2] Plaintiff submits that Bauman's omission, failing to shout a warning when he saw the tractor rolling toward the plaintiff, also was negligent. The question of whether or not Bauman had an affirmative duty to warn plaintiff is not without difficulty. See generally, 2 Harper & James, The Law of Torts §18.6 (1956); Restatement 2d, Torts §321 (1965). It is unnecessary to decide this question, however, since Bauman clearly could be found to have otherwise breached a duty by acting negligently in leaving the tractor under the circumstances.

invitees, a possessor of land has an additional duty to exercise reasonable care to discover the negligent acts or the likelihood of negligent acts by third persons and to warn or otherwise protect his business invitees. *Engstrom v. Huntley,* 345 Pa. 10, 26 A. 2d 461 (1942); Restatement 2d, Torts §344 (1965). One aspect of this duty is that the possessor of land must exercise a reasonably careful supervision of the appliances and methods of an independent contractor whom he has employed or permitted to carry on upon the land an activity directly or indirectly connected with the business use thereof. *Smith v. Lit. Bros.,* 174 Pa. Superior Ct. 102, 100 A. 2d 390 (1953); Restatement 2d, Torts §344, comment c (1965).

The Freemans owed both these duties to plaintiff. With respect to the first duty, all the conditions necessary for its existence were present. The Freemans permitted Bauman to operate the tractor. The Freemans knew or should have known of their ability to control Bauman, because he was acting on their land for their benefit. See Restatement 2d, Torts §318, comment a. They knew or should have known of the opportunity to control him, because they were present on the blacktopping site. See Restatement 2d, Torts §318, comment b. They knew or should have known of the need to control him, because the operation of construction equipment around working men creates apparent risks. With respect to the second duty, all that is necessary for its existence is that plaintiff be a business invitee. He was. Plaintiff testified that Mrs. Freeman expressly invited him to help blacktop the tavern's parking lot, a business related activity. The fact that he was not to receive compensation does not prevent him from being a business invitee.

A jury could reasonably find that either of these duties was breached. When a tractor and a truck are

operated in the vicinity of laborers unable to look out for themselves while they work, a supervisor may be reasonably necessary to protect the laborer's safety. Supervision would be especially called for in this case because dangers would be more likely in the amateur group that the Freemans assembled than they would be in an experienced crew; and a temporary group could not be expected to supervise its own project as a professional contractor might. By failing to provide supervision, the Freemans breached both their duty to prevent a third person permitted to conduct an activity on their land (i.e., Bauman) from creating an unreasonable risk of bodily harm to plaintiff and their duty to discover the negligent acts of third persons (i.e., Bauman and Jimmy) and to warn or otherwise protect plaintiff.[3]

Bauman and the Freemans submit that plaintiff's failure to use more vigilance than he did constituted contributory negligence as a matter of law. It is argued that plaintiff's construction experience makes him an expert in dangers associated with heavy equipment and that plaintiff's expert knowledge together with his observation of Jimmy playing around the unattended tractor should have alerted him to danger. Viewed in a light most favorable to the plaintiff, however, he did not have reason to foresee danger from what he observed. Plaintiff testified that when he saw Jimmy playing around the unattended tractor he did not know

---

[3] Plaintiff submits that the Freemans also are liable for Bauman's act under the principle of respondeat superior. However, the trial judge charged the jury that Bauman was not the agent, servant or employee of the Freemans. And the Freemans submit that even if Bauman was their servant, the plaintiff is barred from recovery by the fellow servant rule. It is unnecessary to decide the correctness of these positions since the Freemans' liability is supportable on a completely independent theory, i.e., their own negligent failure to prevent or discover dangers to plaintiff's safety.

its motor was running because a victrola on a porch near him was playing loud music. Thus a jury could reasonably find that plaintiff's attention to his work was not negligent while the father's conduct in leaving the tractor unattended, knowing that its engine was running, was negligent. Similarly, a jury could reasonably find that lack of vigilance by the plaintiff was not negligent while lack of supervision by the Freemans was negligent. The workers who were too busy to look out for themselves could assume that the one in charge would take reasonable steps to protect them from moving vehicles. Plaintiff testified that Freeman was in charge of the job. Thus, the jury's verdict is not unreasonable and certainly there are no grounds on which to find contributory negligence as a matter of law.

### Bauman's Motion for a New Trial

Bauman's contention that a new trial should be granted is based solely on alleged errors in the trial court's instructions to the jury. However, an examination of the record discloses that these particular assignments of error were not included in his motion for a new trial below. Nor does a reading of the court's opinion indicate that they were considered. Under such circumstances, they will not be considered on appeal, *Perles v. Northumberland County Return Board,* 415 Pa. 154, 202 A. 2d 538 (1964), and *Sweitzer v. Whitehead,* 404 Pa. 506, 173 A. 2d 116 (1961). Additionally, although at the conclusion of the charge the trial judge specifically invited counsel to state any objections they entertained thereto, Bauman's counsel remained silent and failed to enter even a general exception. Failure of trial counsel to manifest any disagreement with the court's instructions pre-

cludes, in the absence of fundamental and prejudicial error, a subsequent contention that it was erroneous. *James v. Ferguson,* 401 Pa. 92, 162 A. 2d 690 (1960); *Luterman v. Philadelphia,* 396 Pa. 301, 152 A. 2d 464 (1959).

Our reading of the instructions to the jury fails to disclose any fundamental and prejudicial error that would warrant a retrial.

Judgments affirmed.

Mr. Justice COHEN dissents in part and would enter judgment in favor of defendants, Clarence and Marie Freeman.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

While I find myself in accord with the majority's resolution of the substantive aspects of this litigation, I wish to reiterate my view that a general exception should not preserve on appeal alleged errors in a charge where, by timely *special* exception, counsel could have requested the court to correct this error below. See *Lambert & Intreri, Inc. v. Holiday Motor Hotel, Inc.,* 428 Pa. 299, 301-02, 236 A. 2d 804, 805 (1968) (concurring opinion); *Lobalzo v. Varoli,* 422 Pa. 5, 7-10, 220 A. 2d 634, 636-37 (1966) (concurring opinion). It is only where the error below could not be corrected that I believe a general exception is sufficient; it is thus irrelevant to me whether the error below was "fundamental" for, the more fundamental the error, the more incumbent it is upon counsel to call this matter to the attention of the court below.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I would reverse the judgment of the lower Court and enter judgment n.o.v. for Bauman and certainly for Clarence and Marie Freeman. The Freemans are landowners, and a possessor of land is not and never

has been until the Majority have by implication made him today, an insurer or guarantor.

Where I differ from the majority Opinion about Bauman is that it was not reasonably foreseeable that a 7-year old child would get into *and drive* a heavy tractor up a hilly slope while his father went to the men's lavatory. If a judgment n.o.v. were not entered, I would grant a new trial in the interest of Justice. If defendant, who was *absent,* should have foreseen that a 7-year old boy would get in and drive a heavy tractor, why should not plaintiff, who was *present,* have foreseen and guarded himself against it?